UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JANE DOE 2,<br>    Plaintiff,<br><br>    v.<br><br>BROWN UNIVERSITY,<br>    Defendant. | C.A. No. 23-cv-051-JJM-PAS |

## MEMORANDUM AND ORDER

Plaintiff Jane Doe, a graduate student at Brown University, alleges that she was subjected to sexual harassment by John Doe, a fellow Brown graduate student, at an off-campus party. She reported this incident to Brown, whose Title IX Office investigated the incident and offered Ms. Doe assistance with her education and living situation but concluded that Mr. Doe was not responsible. Ms. Doe sued Brown, alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-88, and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112 *et seq.*, along with several state-law claims. After motion practice reduced Ms. Doe's case to three Title IX counts (I-III), one RICRA count (XI), and a state law Intentional Infliction of Emotional Distress (IX) ("IIED") claim, Brown moves for summary judgment on these remaining claims. ECF No. 71.

## I.  BACKGROUND

The facts here are largely undisputed. Ms. Doe attended a private party at an off-campus residence hosted by other Brown graduate students in the Religious Studies and Political Science Departments. ECF No. 73 ¶¶ 20-25. Brown did not

own the house and it did not sponsor or organize the party. *Id.* ¶¶ 21-22. Mr. Doe was also in attendance. Ms. Doe and Mr. Doe interacted twice at the party; first, Mr. Doe made an inappropriate comment about her body, causing Ms. Doe to move away from him and then, he followed her and touched her breast without her consent. *Id.* ¶ 24.

About one week later, Ms. Doe notified her advisor, Professor Stephen Bush of what occurred at the party, and as a mandatory reporter, he then notified Dean Maria Suarez, the Graduate School's Deputy Title IX Coordinator, who reached out to Ms. Doe shortly thereafter. *Id.* ¶¶ 73-75. Brown's Title IX Program Officer, Rene Davis, met with Ms. Doe and another graduate student to discuss Mr. Doe's interactions with Ms. Doe at the party as well as broader concerns about his behavior that was affecting other students. *Id.* ¶¶ 77-78.

Ms. Davis informed Ms. Doe of her options during the summer of 2019, as she evaluated whether she wished to proceed with a complaint against Mr. Doe (*id.* ¶¶ 79-104); at Ms. Doe's request, she evaluated whether there was any basis for Brown to file an institutional[1] complaint against Mr. Doe (which the Title IX Office determined was not supported by the evidence) (*id.* ¶¶ 93- 95); she processed Ms. Doe's individual complaint against Mr. Doe upon its filing in September 2019 and issued a no-contact order (*id.* ¶¶ 105-13); she conducted a prompt investigation during the fall 2019 semester, interviewing several attendees at the off-campus party (*id.* ¶¶ 134-49); and

---

[1] An institutional complaint, under the Title IX Policy, may be filed if the evidence supported an observed pattern of prohibited behavior. *Id.* ¶ 94.

convened a hearing on January 17, 2020 to determine Ms. Doe's complaint against Mr. Doe. *Id.* ¶¶ 153-57. The hearing panel issued its Memo of Findings on January 27, 2020. *Id.* ¶ 155.

Under Brown's process, Ms. Doe had the right to select an advisor to assist her during the investigation and hearing, to identify witnesses to the investigator, to review the draft investigation report and provide comments for the investigator's consideration before finalizing the report, and to submit a written statement to the hearing panel, but she opted not to take advantage of those rights. *Id.* ¶¶ 126-28; 139-42; 154. Ms. Doe testified that her lack of participation was due to trauma caused by Mr. Doe's response to her complaint where he denied Ms. Doe's version of the facts and called out Ms. Doe's behavior. *Id.* ¶¶ 122-23; 141. The hearing panel determined that there was not enough evidence to find Mr. Doe responsible and she chose not to appeal. *Id.* ¶¶ 155, 158. Ms. Doe has continued her graduate studies at Brown, choosing to attend classes remotely and is on track to graduate this year.

## II. STANDARD OF REVIEW

A party is entitled to summary judgment if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A party can show a genuine dispute by citing to materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials," or by showing that the materials cited either do not establish a genuine dispute or are not supported by admissible evidence. *Id.*

Summary judgment is mandated against a party who, given adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case ... on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof of an essential element shows that there is "no genuine issue as to any material fact" because if one element fails, all other facts are rendered irrelevant; it entitles the moving party to "judgment as a matter of law" because, by definition, the nonmoving party cannot carry their burden at trial. *Id.* at 323.

## III.  DISCUSSION

Brown argues in its motion that there are no material issues of disputed fact on Ms. Doe's remaining claims for gender discrimination and IIED such that this Court should decide in its favor as a matter of law. Ms. Doe argues that there are many material disputes in this case that are better suited to a jury's determination. The law here is generally not in dispute. The Court's brief discussion of the guiding legal principles and its highlighting of the material facts in the record follows.

### A.    Title IX (Counts I, II, III) and RICRA (Count XI)[2]

To succeed on a "deliberate indifference" claim, a plaintiff must show that (1) "she was subject to 'severe, pervasive, and objectively offensive' sexual harassment";

---

[2] Rhode Island courts look to federal law in construing their analogous civil rights statutes, *Doe v. Brown Univ.*, 43 F.4th 195, 206 (1st Cir. 2022); *see Colman v. Faucher*, 128 F. Supp. 3d 487, 491 n.8 (D.R.I. 2015) (citing *Casey v. Town of Portsmouth*, 861 A.2d 1032, 1037 (R.I. 2004)), so the Court will analyze the Title IX and RICRA claims together.

(2) "the harassment caused the plaintiff to be deprived of educational opportunities or benefits"; (3) the funding recipient was aware of such harassment; (4) the harassment occurred "in [the funding recipient's] programs or activities"; and (5) the funding recipient's response, or lack thereof, to the harassment was "clearly unreasonable." *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-50 (1999)).

"[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference; in the Title IX context, 'funding recipients are deemed deliberately indifferent to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Id.* at 73 (quoting *Davis*, 526 U.S. at 648). Deliberate indifference is a "stringent standard of fault, requiring proof that a[n] ... actor disregarded a *known or obvious* consequence of his action" or inaction. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997) (emphasis in original).

Brown argues that the facts are undisputed as to each element in its favor. It argues that one incident does not make the harassment severe and pervasive, Ms. Doe was not deprived of any educational opportunities at Brown, Brown had nothing to do with or any knowledge about the off-campus party where she was harassed, and that its response when Ms. Doe went to the school about Mr. Doe's actions was reasonable. The Court recognizes these arguments, and agrees that there

5

are no material disputes over most of the elements,[3] but chooses to focus its analysis on the final element, that is, was Brown's response to Ms. Doe's report of harassment clearly unreasonable?

To answer the question of whether Brown was deliberately indifferent to Ms. Doe's reports of harassment at the summary judgment stage, the Court looks to the record for undisputed material facts about what Brown actually did after she reported Mr. Doe's conduct. Ms. Doe does not materially dispute that Brown followed its own policies after her initial report to Professor Bush. He was a mandatory reporter so notified Dean Suarez, who reached out to Ms. Doe. Then Ms. Davis met with Ms. Doe and another graduate student to discuss Mr. Doe's interactions with Ms. Doe at the party as well as broader concerns about his behavior.

It is undisputed that, as the main Title IX point person, Ms. Davis informed Ms. Doe of her options during the summer of 2019, as she evaluated whether she wished to proceed with a complaint against Mr. Doe; after those discussions, Ms. Davis evaluated whether there was any basis for Brown to file an institutional complaint against him and told her that the Title IX Office determined the evidence

---

[3] For example, this Court has previously recognized that "a single instance of student-on-student harassment, while unacceptable, is not 'severe' and 'pervasive.'" *Doe v. Brown Univ.*, 505 F. Supp. 3d 65, 76 (D.R.I. 2020) (citing *Haidak v. Univ. of Mass. Amherst*, 933 F.3d 56 (1st Cir. 2019); *see also Davis*, 526 U.S. at 652-53 ("we think it unlikely that Congress would have thought such behavior [a single instance of peer harassment] sufficient to rise to the level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment."). So, it is unlikely to find that Ms. Doe's encounters with Mr. Doe during that one evening, while unacceptable social behavior, were severe or pervasive.

did not support it; when Ms. Doe decided to file a formal complaint, Ms. Davis processed the complaint against Mr. Doe upon its filing in September 2019 and issued a no-contact order; she conducted a prompt investigation during the fall semester, including interviewing several attendees at the off-campus party; and convened a hearing on January 17, 2020 to determine Ms. Doe's complaint against Mr. Doe. The hearing panel issued its Memo of Findings on January 27, 2020 and determined that there was not enough evidence to find Mr. Doe responsible. It is also undisputed that, once she filed her complaint and Mr. Doe responded, Ms. Doe chose not to participate in the adjudicative process that Brown provided or to appeal the panel's decision. She testified that she was traumatized by Mr. Doe's response to her complaint[4] and could not continue, but there is no dispute that she did not tell Ms. Davis that when the case was pending. That decision to keep that information to herself cannot be now used against Brown as a disputed fact supporting an allegation of deliberate indifference.

While it is clear that Ms. Doe believes that Brown should have done more in its investigation and during the hearing process, that claim is not enough in a Title IX claim. *Porto*, 488 F.3d at 73. "Title IX does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions,

---

[4] Ms. Doe seemingly argues that Brown should have done something when Mr. Doe made derogatory statements about her in his response. It is understandable that Ms. Doe was upset at Mr. Doe's response, but as an accused person, he had a right to respond to the complaint against him and to name corroborating witnesses in his defense. Brown cannot be found as a matter of law to be deliberately indifferent to Ms. Doe's harassment just because it adhered to its process and considered all of the evidence that came out of the investigation and hearing.

or to adopt strategies advocated by [students]. The test is objective–whether the institution's response, evaluated in light of the known circumstances, is so deficient as to be clearly unreasonable." *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007). In light of this standard, the Court cannot say that Brown's conduct, once it learned of Ms. Doe's report of harassment, was "so lax, so misdirected, or so poorly executed as to be clearly unreasonable under the known circumstances." *Id.* at 175. The undisputed evidence does not support the conclusion that Brown was deliberately indifferent[5] and so Ms. Doe's Title IX claim fails as a matter of law.

## B.    Intentional Infliction of Emotional Distress

"To create liability for intentional infliction of emotional distress in Rhode Island, '(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.'" *Doe v. Brown Univ.*, 43 F.4th 195, 209 (1st Cir. 2022) (quoting *Swerdlick v. Koch*, 721 A.2d 849, 862

---

[5] Ms. Doe focuses the Court on specific language in the *Fitzgerald v. Barnstable School Committee* case where the court held that, in a harassment suit, "the institution's deliberate indifference must, at a minimum, have caused the student to undergo harassment, made her vulnerable to it, or made her more likely to experience it." 504 F.3d at 171 (citing *Davis*, 526 U.S. at 645). Because the Court finds that Brown was not deliberately different, it need not analyze the concept of whether a recipient's deliberate indifference makes a plaintiff vulnerable to harassment. The Court does note though that there is no evidence–disputed or not–of causation between Brown's conduct and any further harassment by Mr. Doe because both Ms. Doe and Mr. Doe abided by the no-contact order and there is no evidence that he harassed her again.

(R.I. 1998)). To find liability, Brown's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman v. Davenport-Metcalf*, 851 A.2d 1083, 1090 (R.I. 2004) (quoting Restatement (Second) Torts § 46 (1965)). A plaintiff must also show some "physical symptomatology resulting from the alleged improper conduct." *Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I. 1997) (citing *Reilly v. United States*, 547 A.2d 894, 898 (R.I. 1988)).

The Court is aware of the First Circuit Court of Appeals' decision in *Doe v. Brown University*, reversing a grant of summary judgment on a Brown student's IIED claim. 43 F.4th at 210. In that case, the court considered the parties' relationship, the fact that Brown faculty members were aware of the plaintiff's "enhanced susceptibility to extreme emotional distress," and determined that a jury could find that Brown's attempt to coerce him into withdrawing by piling on charges against him while he was vulnerable and stressed "went beyond all bounds of decency." *Id.* That is not the case here.

Even considering the parties' relationship, Ms. Doe has not pointed to any evidence in the record that could rise to this high standard. It is undisputed that Ms. Davis actively worked with Ms. Doe to manage her situation after she reported Mr. Doe's harassment. There is no evidence that Ms. Davis prevented Ms. Doe from filing a complaint, and while Mr. Doe's response to her complaint was upsetting, Ms. Doe had every opportunity to present her side of the events that evening, she opted to not have an advisor through the process despite Brown's offer of one, when

she received the investigator's report, she did not make any comments or corrections, and she did not appeal the hearing panel's decision.

Outside of Ms. Davis's conscientious handling of the complaint and investigation process as previously detailed, she worked on (1) finding available solutions whereby both Ms. Doe and Mr. Doe could access a Graduate Study Room without interacting with one another (which included Ms. Davis touring of the room herself to understand its configuration and usage), (2) contacting the University's Ombudsperson and exploring off-campus mediation services for Ms. Doe's benefit, (3) interviewing more students and meeting with faculty about the possibility of filing an institutional complaint, and (4) communicating often and promptly with Ms. Doe. No evidence shows that Ms. Doe had an "enhanced susceptibility to emotional distress" or that Brown knew of it then and chose to act in a way that was outrageous and beyond the bounds of decency. *Id.*

Ms. Doe counters that there are disputes over the characterization of Brown's conduct. For example, she argues that it is outrageous that Brown knew about Mr. Doe's previous predatory behavior and did nothing to protect her and others, but Ms. Doe did not include any of this prior conduct in her formal complaint. She argues that Ms. Davis made the Title IX process confusing and unclear and tried to steer her away from exercising her rights. The former is unsupported by the timeline and facility with which Ms. Doe navigated the process with Ms. Davis's help and the latter is belied by the fact that Ms. Doe did make the decision to file a formal complaint after Ms. Davis looked into whether she could file an institutional complaint and

concluded that there was not evidence to do so.  Finally, she argues a catch-all claim that Brown did nothing for months to restrict Mr. Doe's actions after they knew about her allegations.  The evidence also does not support this contention because Brown did many things, including enforcing a no-contact order that successfully prevented Ms. Doe and Mr. Doe from interacting during his remaining time at Brown.  There just is not enough evidence of extreme and outrageous conduct in this record to allow Ms. Doe's IIED claim to go to a jury.

IV.    CONCLUSION

Because the parties agree on the law governing this case and the Court has concluded that Ms. Doe has not pointed to material disputed facts in this record that require a jury's consideration, and it is clear that Brown is entitled to judgment as a matter of law, the Court finds that summary judgment for Brown is appropriate on all counts (I, II, III, IX, XI).  The Court GRANTS Brown's Motion for Summary Judgment.  ECF No. 71.

IT IS SO ORDERED.

_____
Mr. John J. McConnell, Jr.
Chief United States District Judge

March 14, 2025